May it please the court, your Honorable Judges. On behalf of Mr. Wilson, I wanted to highlight first that I ask the court to fully consider the denial of the Rule 29 motion as well as the sentencing arguments, but we'll reserve the majority of my time here today to talk about the denial of his speedy trial rights under 3161 of the Speedy Trial Act. I wanted to first start drawing the court's attention to its decision in United States v. McGee. And I ask the court to look first at that, to distinguish it, and to unambiguously not follow the Second Circuit which is cited therein. I ask that this panel adopt the Sister Circuit opinions from the First, the Third, the Fifth, the Sixth, and the Ninth, all of which find that the Speedy Trial Acts most applicable in this case which are H1A and H1F. In this particular matter, and I'll draw near to some dates as I speak, but what occurred here for Mr. Wilson, and there's a seminal date which is November 18. On that day, Mr. Wilson came to court with myself after I had filed a scheduling trial continuance. He resisted that in his own letter to the court. On that day, the Honorable Judge Mahoney held a colloquy with him and determined what his position was. On that day, Mr. Wilson, resisting my request to continuance for scheduling issues, raised concerns with Judge Mahoney where she then, sua sponte, issued an order for his competency determination. And she, in that order, both issued an order to determine his competency for an evaluation, but also to transport him to a place for evaluation. Now, what became important in that time frame is that there had been, and I want to get to this scenario, that there had been a prior end of justice continuance. And I know the government highlights this in its brief that December 19, so the effective dates are November 18, December 19. On December 19, there was the trial date with a prior end of justice continuance. I'm asking this court to find, in addition to highlighting the McGee, be distinguished. And what's distinguished is that the transportation provisions of H1F are independent of H1A. McGee stands for, and the government argues, that effectively once a competency evaluation process starts, then any time, no matter reasonable or unreasonable, it's always excluded under the Speedy Trial Act. Now, the various other circuits besides the Second Circuit say no. It would be duplicitous to find that the process is always excluded without specifically under H1F, which provides that the government only has 10 days to transport an individual for the competency evaluation. What about, so starting with the first one, so you're right about the 10 days. It appears the first, on the way there, that's what I'm getting at. There's two potential ways that that time, a lot of that time doesn't count. One is the ends of justice finding for the continuance, and then there is a motion to proceed per se, which was heard, which would have given the following 30 days. The way I read that, from September 20 to December 19, those days are excludable, and then nine days later he reaches Seattle. So those nine days would be includable. Do you agree with that? I don't, because I can distinguish, and I'm going to give a hypothetical to why I think you can distinguish. There's a couple cases cited by Judge Mahoney, the government, and myself. There's a Western District of Michigan case, last name Mann. There's also a Western District of Missouri case, Hawkins, where there were concurrent requests, and each of those cases the defendant came forward and says, I want a competency determination and I want a new end of justice continuance. This end of justice continuance preceded the sua sponte competency determination. So hypothetically, I can imagine a scenario where a defendant, for various reasons, a complex white collar case or some other voluminous discovery case, we continue for nine months because of whatever the reasons may be. But then in the future, something befalls the defendant, he has a car accident. There's a new need for a competency evaluation interceding that nine months. Why would we not come forward and say, well, that's the governing time period because of intervening factors? And that's what happened for Mr. Wilson was an intervening factor. He didn't concurrently ask for this. But the Speedy Trial Act, I don't think, really accounts for that. There's nothing that says you have to restart the clock or that these categories don't count if there's some sort of intervening factor. That's the problem I'm having with your argument. I just don't see that in the text. It's very mechanical. You count these days and you don't count other days if certain conditions are met. Well, and Judge Mahoney herself effectively did that if you look at the date she counted because she used the December 7 day as the effective date of transportation. And that's how he got to that nine days that she counted towards and didn't exclude from the Speedy Trial Act because she counted November 18 as the effective date under H1F for transportation, even though it would have otherwise been excluded. So if it's mechanical, as you suggest, November 18 to December 19 would all be excluded under that prior ends of justice. And then you would kick in to H1F for transportation and that happened. Do we have to follow what the magistrate judge said or can we look at it and say, well, actually the plain language means that this is excludable under those categories? Well, you don't have to follow them. This is a de novo review. I understand this court can do as it pleases. But by going the route I'm suggesting by exempting out or overriding the prior ends of justice in a case-by-case basis, that's why I came to the hypothetical because there could be a very long continuance, but there could be an intervening. So what would be the justification for overriding the ends of justice continuance? It would be the interest of justice and the prejudice before the defendant in this particular case. And what is that prejudice? For my client, it was the transportation delays and honestly his own resistance to the continuance. How did the delay prejudice your client? Primarily his own mental health status. As the court will see, he was not even in attendance at his own trial. The transportation through the various parts of this country without medication got to the point when we came to trial he wasn't even there. He walked out during jury selection. What I would note is by the time we got to sentencing, and I think I highlighted this during sentencing, that I proffered that his mental health status had greatly improved with medication and treatment, which was not occurring while he was being delayed through this competency evaluation process. I wanted to go back to Judge Strauss' second question, which the government raises a secondary argument, which was that pro se filing, which would be a FREDA hearing. Judge Mahoney attempted to do that FREDA hearing on November 18. And to say that that was under advisement for those additional 30 days, as I think is kind of suggested by the government and a little bit by Judge Strand's ultimate order, is that really I think was kind of dead on arrival, because you can't really determine his pro se ability unless you determine his COMSI first. One of the citations in- But there are other facts that are involved that one would find at the FREDA hearing, and there was a FREDA hearing of sorts. There was a dialogue that took place, information obtained by the judge, and the judge says, I need an additional fact. I need to know whether you're competent or not. So it really was sort of all pending. I mean, as an old district judge, I would have thought that motion was still pending in front of me. I would not have thought that if they came back, if they obviously came back and said you're not competent, that that would end that discussion. But if it comes back competent, I would have thought I still have to make a decision on FREDA, and I still have to move forward. And I understand where the court's going, but to hold that in abeyance forever? Well, it doesn't hold in abeyance forever. I mean, but you can't really hold a FREDA hearing unless you have the person who wants to represent himself standing in front of you. So until he gets back into jail and you can bring him into your courtroom, what exactly are you supposed to do? Right. And I actually, in footnote, on page 16, it's a footnote citation to a District of D.C. case, Phenasy. And I come up with the analogy of when this would be. Because you're kind of putting the cart ahead of the horse a little bit if you're going to have a FREDA hearing, if he's competent or not. Yeah, but a lot of times the competency question doesn't even become emergent until you're in the middle of the FREDA hearing and somebody says something that seems to be quite detached from reality. And that's what happened here. But it was almost construed as a pro se request. His letter was a rambling statement. In reality, kind of resisting his counsel's own scheduling continuance. And then sua sponte during, it turned into a FREDA hearing in a sense. But then the court obviously had the concerns about his competency. But the court finding a 30-day under advisement, I think that the FREDA hearing was DOA on the November 18 date. It renewed itself because he subsequently filed more letters with the court. So Mr. Wilson sent more letters to the court attempting to fire me while he's under competency evaluation. So it's really a second FREDA hearing when we got to March. Is that question about whether it was pending or not, is that a fact question which we would review for clear error? Or is that a legal question that we would review de novo? I think it's legal because the court didn't raise it, the government didn't resist it either that this was a pending motion. I had to think about that one a little longer. It seems to be legal, not factual. This one's also more unique because the FREDA determination is a sealed record without the government. So I don't know what facts ultimately get determined during the FREDA. It's an analysis of if he's capable of proceeding. The reason I brought up the Phenasy case, because in that particular case that's what the court did, was use the H1F timeline to proceed, even though there was a pending detention hearing. The reason I bring that up is you had to determine whether he's competent first and then come back and decide if he can be released. If he wasn't competent, he wasn't going to be released at detention. In this particular case, you had to determine if he was competent, determine whether or not he could later proceed pro se. I wanted to touch just quickly also on the second period of time, and that is the February 14 to 21 timeframe on the back end. What I wanted to highlight there is the dates of orders. When the court ordered the competency evaluation in November, it provided for a 30-day evaluation at the point of arrival, which would have been December 28th. Then the government, over the resistance of the defendant, got a 15-day extension. That meant that February 14 was the end of the evaluation period. I circle back to distinguishing McGee for this reason, is because on February 14, the evaluation process was over, but then the marshal's internal system didn't generate the new transportation order back until the 21st. There's that seven-day window that I believe falls under a reasonableness, unreasonableness standard. If the court continues to follow in McGee the holding of Vasquez from the Second Circuit, that time will always be excluded from the speedy trial. I'm asking for that to be evaluated on whether or not that delay was reasonable. In this case, I would point to Docket 52. When Mr. Wilson in the evaluation process was demanding return, and everybody knew he was wanting to get back for a speedy trial as fast as possible, that seven days became really unreasonable, fact-specific to Mr. Wilson. But you agree, though, that under the Speedy Trial Act itself, it's when the marshals are notified to take him, and that you don't want us to impose a reasonableness requirement on that? I just want to be sure you're not making a statutory argument. No, I'm not. I'm not suggesting that H1F provides a notice that's constructive. I would hold the government to the same burden because it's arguing that, effectively, December 7 becomes the date of transportation instead of the November 18, really. I think we have to cut it equally both ways. So I concede that the 21st is the order just the same as November 18th is the order. So if there's no questions, I was going to reserve the remainder of my time. Thank you, Mr. Weber. Mr. Fairchild. May it please the Court, Counsel. My name is Ford Fairchild, and I represent the United States. I want to walk through the speedy trial calculations because I think that's the most important issue here. The parties agree that before the 20th of September, the 26 days expire. The next time period is September 20th to December 19th, and that's where the district court concluded zero days ran. We're going to come back to that because that's one of the key issues here. The next time period, December 20th to the 28th, that's the nine days that the court found and that Judge Strauss, you were discussing with Mr. Weber. Then February 14th to February 21st, the district court concluded zero days ran, and this is another one of the real fighting issues on this case. On what basis? What was the reason no days ran? Yes, Your Honor. So the February 21st was used as the date of the order by the district court. The order to return. The order to return, yes, Your Honor. I'll come back to that in a moment. Continuing kind of my march here, the February 21st to March 28th, those are 22 days that the district court counted. Then March 28th to April 5th, seven more days that the district court counted. Up to the May 17th, 2022 resolution, the district court's order affirming the R&R. So 64 days by the district court. The defendant in his brief asks for another four days because the trial didn't actually happen until the 22nd. Now, on that point, I'll just say that he didn't raise that below, so it's really foreclosed. And even if the court wanted to consider it, it only gets him four more days still then within the 70, if you follow the 64 days that the district court came up with. Additionally, however, and Judge Strasch, you alluded to this already, it is the government's position that instead of just following the conservative approach of the district court, I would urge this court, I would nudge this court to try to be a little more liberal in its interpretation and add back the nine from December 20 to 28 and the 22 from February 21 to March 28, all because there were motions pending at that time. But you win regardless. I mean, if those nine and 22 days are included, my understanding is we're at 68 days, I believe. So either way, you win. So we don't have to. I mean, from the government's point of view, we don't really have to do that in order for the Speedy Trial Act to have been followed. You know, I'm infected by the time, I suppose, but the government has two paths to victory here. The conservative approach of the district court, government wins. But also, I would urge the court to go the step further and let the government win also because the two motions were pending. And I'm going to just spend a second on that because I think that's really important. So from November 18, 2022, all the way to March 30, 2023, there were two motions pending. There was a motion to proceed pro se, and there was a motion to determine competency. Each of those, quote, held in abeyance pending determination of the competency. That's the magistrate judge's order, RDoC 39 at 2. Each was resolved after the March 28 hearing. One, the competency hearing by order on March 29. That's DoC at 58. And the other, the self-representation, was decided in an order on March 30, DoC at 60. So that there were hearings scheduled in both of those makes this case, as Mr. Weber says, kind of the cart before the horse. But here he misunderstands where the cart and where the horse are. Since the magistrate judge set hearings, we can presume, we know that the hearings were necessary to the resolution. Because the hearings were set, the hearing clause, not the speedy resolution, is what governs. So H1F, the hearings clause, is what controls. And we know further that it doesn't matter whether or not these are frivolous or important. That's the point of Williams. So in this case, you've got two pending motions. It's only unimportant for the Speedy Trial Act considerations. You would still have a Sixth Amendment speedy trial concern that could happen as a result of pending motions. You know, the defense says those pending motions could pen forever. Well, they can't pen forever. Because at some point under the Sixth Amendment, you'd be able to present the claim that you're in violation of the Constitution, which is a separate analysis than you're under the Speedy Trial Act. Am I wrong on that? Well, I'm a little outside of my depth when I start talking about the Sixth Amendment. It's not an issue squarely here. But I'll rely on your experience on the district court. This is not an overly long trial setting. This is a fairly rapid March 2 trial. So I would be surprised if we have Sixth Amendment problems here. I'm not saying that. What I'm just saying in response to the claim that the appellant made is that those motions, they could pen forever. I thought I heard him say that. Right, and I think the best response, in addition, since I have to plead ignorance on the Sixth Amendment, my best response is factual. It didn't pen forever. They weren't on the docket forever. The district court made a calculated decision, and the right decision, that these two motions could not be decided until she knew more about the defendant via the competency evaluation. And then she held it in abeyance and then made those decisions later in March of 2022. The court said that it's practice with regard to the motion for competency always to set it on the docket and always hold it in abeyance just so it won't get lost in the shuffle. And that's a prudent practice. But by doing so with regard to the motion of competency, then we have the consequences that it's treated like a real hearing. And those hearings are not kabuki theater. They were real hearings. The defendant was there. I was there. Mr. Weber was there. We had conversations. It's not as if they were without effect. I think the court below looked backwards in time and said maybe I could have made the decision ahead of time, or I could have made the decision ahead of time. But that was not knowable until the hearings were actually concluded. And, of course, as I understand 4241 and 4247D, the defendant has a right to present evidence at his competency hearing and has a right to testify at his competency hearing. All that by way of saying I think the government should win on the more generous, the more expansive role that all that time is excludable because of the pending motions. But to go back to one of the areas that the district court and the government agreed on, the September 20th to December 19th time period, the district court ruled consistent with this court and other courts' understandings that that whole time is excluded because of H7A regardless of whether the reasonableness of the transportation delay. And the plain reading of the statute supports this, but also Patterson from the 7th Circuit, Conlon from the 5th Circuit, Brennan from the Western District of New York, Hawkins from the Western District of Missouri, Mann from the Western District of Michigan. All of those support that interpretation. And of course that's true because there's no reason to think that you can't have independent controlling passages of the Speedy Trial Act. It's like rounds and a gun. Each one will kill you. Each one quiets the issue. There's no reason to think that they are mutually exclusive in the way that the defendant is suggesting. Also, in his brief he talks about how this was all beyond his control and how later on in answering your question, Judge Smith, he said that he was prejudiced by this delay. Well, a couple things. This delay was of his causing. If you take a look at page 29 of my brief, it points you to the district court's record on this. The defendant was obstructionist from the beginning. If you look at the mental health, the transcript from the mental health competency hearing, he says that he refused the mental health examination. So his refusal is why we slow down here. He's not an innocent victim in this. And it delves down into the prejudice question. So he claims that the prejudice is the transportation days and his mental health. And he suggests that his mental health got better over the course of trial, and that's why he was there at sentencing. I'm not sure that a fair reading of the record supports that inference. The defendant was, as I pointed out, obstructionist in the hearings that he had with the magistrate court, and then he absent himself from trial, and that was all by choice. And even if his mental health was prejudiced in some way by that travel, that delay that comes from his own making, that's not the kind of prejudice we're talking about when we're talking about whether this should be dismissed with prejudice or not. Instead, and of course we don't have to get there because there's no reason to find that the Speedy Trial Act was exceeded. I want to talk about the other kind of fighting issue here. February 14th to February 21st. I want everyone to be on the same page here. On February 21, 2023, the USMS, the United States Marshal Service, received that study order. That's Docket 79 at 3. The district court in the R&R assumed the date of February 21, 2023, was the date of the order. That's R Dock 84 at 19. The defendant did not object to the use of the 21st. To the contrary, in his objections, he said, the R&R accurately accounted for the transportation order being February 21. Then he goes on to say, but it failed to confer the distinction between the 14th and the 21st. Isn't there a possibility? I understand you're making the argument he didn't object, but isn't there some intuitive appeal to the argument that's being made, which is that the government, which is solely basically in charge of his transportation, he can't rely on anyone else. He can't call a girlfriend. He can't call his mom. He could manipulate those dates. In other words, if they know that there's no marshals available, there could be no formal request made until the date when they are. Therefore, you could have somebody sitting seven or eight or nine months, probably exaggerating, after the competency exam is over. I think that's right. I think you could imagine situations that reveal that there was some kind of exploitation of those timings. But that's not in this record. Again, this record shows really the contrary. Additionally, not that it's exactly germane, but one of the weird things about this case is all of the problems started while I wasn't in the room. The judge on her own began to grow concerned about the competency of the defendant in an ex parte hearing to decide whether or not he could represent himself. I wasn't there. The government wasn't there. I know it's not exactly germane, but it's kind of like what you're saying. There's some unsettling piece of the principles here, but the facts belay those concerns. In this case, we have a straightforward march to trial with the only interruptions in that being of the defendant's own making. He refused to answer the questions of the magistrate court as it was trying to determine whether or not he should proceed as his own lawyer. And then he refused to cooperate with the evaluation and then the motions that he filed. Is this ordinary, though, that somebody might request to be transported back, I'm done, the competency exam is done, and does it normally take like seven days? I mean, that doesn't seem like an extraordinarily long period, but is that sort of standard operating procedure? Is there something different about this that makes why the marshals weren't called immediately? I don't have an answer for you, but I can tell you that from common experience, like not just mine but yours, the marshals don't do anything until they're told to do something. So the fact that the defendant is ringing his cup on the bar saying I'm ready to go is immaterial. What happens here is what is important. February 21, the marshals are told, move him. And then they begin the process. For those reasons, if the court wants to merely follow the conservative approach of the district court, the government wins. But I really would urge this court to take the additional step and say, no, those two motions were in fact pending, they were held in advance, and they were not decided by kabuki theater. Rather, they were decided by actual meaningful hearings at which the parties participated and had the right to participate. And therefore, for both those reasons, the government should prevail on the Speedy Trial Act issues. Unless there are other questions, I will take my leave. I see none. Thank you, Mr. Fairchild. Mr. Weber, your rebuttal. I want to quickly highlight two issues, one raised by Mr. Fairchild, which was the start of my entire argument as to why this court should distinguish McGee and find that that competency evaluation cannot be a motion like any other motion, such as the Pro Se motion or any others. Because the statute clearly provides under subsection H1A and H1F how a competency motion is determined for the Speedy Trial Act. And to use that and to exempt out all that time would completely render the transportation provisions worthless. I wanted to ask you one thing, and I'm sorry to eat into your rebuttal, but we decided a case about a month or two ago called Walter. It dealt with transportation delays in a competency setting. I was in dissent. I thought there was a Speedy Trial violation there. Is there any impact of Walter on this case? I know it was slightly different, but I'm just curious if you're familiar. Yeah, when I read the little bit on Walter that applied to McGee, it seemed kind of dicta. It didn't really analyze it the same way I saw here. And that's, I think, maybe why you're dissent. I apologize. I did not read that dissent. Fair enough. My apologies. That the impact on McGee, I think, has forward problems. It had problems here because the government's arguing to exempt all time for evaluation, just like pro se time. And the only other point I wanted to make to one of your other questions, Judge, that the four days post decision from Judge Strand should count. I think the court counted back four days, and I just highlighted that because I objected to the R&R, I preserve error on that day if the court counts back other days.  Thank you. Thank you, Mr. Weber. The court notes that you're representing your client today under the Criminal Justice Act, and the court thanks you for your panel participation and willingness to serve. That concludes the case. The court will take the matter under submission and render decision in due course.